IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WENDY WILKER and )
MICHAEL WILKER, )
　)
   *Plaintiffs,* )
　)
vs. ) CASE NO. 2:07-cv-00232-MEF
　)
US SERVICES, LLC; )
WILLIE MURRAY ROBINSON, *et al.,* )
　)
   *Defendants.* )

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXTEND EXPERT WITNESS DEADLINE

NOW COME the plaintiffs, **WENDY WILKER** and **MICHAEL WILKER**, and submit the following in opposition to defendants' Motion to Extend the Expert Witness Deadline (Doc. 68):

  1. This is the second time that the defendants have asked this Court to extend the expert witness deadline for the defendants.[1]

  2. Although the defendants agreed to the current expert witness identity deadline of July 29, 2008, have known about the severity of Plaintiff Wendy Wilker's injuries since the date of the wreck, and have made **no effort** to schedule the depositions of her treating physicians, defendants now seek " . . . to determine whether or not the defense will need to retain an expert witness" [Doc. 68 at ¶7]. The defendants' request is

---

[1] By Order dated November 30, 2007 (Doc. 29), the Court extended the defendants' time to disclose experts (accident investigation) from December 3, 2007 to December 31, 2007.

due to be denied as it comes too late in the case because the trial is set for September 29, 2008 - - just over two months' time.

3. Moreover, the defendants have offered no reason why they failed to obtain an expert earlier in the case, if such was their wish, or why they should be excused from compliance with the Court's Order concerning experts (Doc. 40).

4. This Court has issued two Uniform Scheduling Orders (Docs. 10 and 42), as well as an Order after the pre-trial conference (Doc. 40), which addressed the issue of expert witness disclosure. With regard to the Order following the pre-trial conference (Doc. 40), the Court made two directives in that Order which are relevant to the current inquiry: First, at ¶3, the Court noted that the deadline for disclosing retained experts or witnesses whose duties as an employee of the party regularly involve giving expert testimony " . . . will be deemed to have <u>expired</u> for any expert that the party could <u>reasonably have complied</u> with its disclosure obligations prior to the previous deadline."[2] *(Emphasis supplied)* Secondly, in ¶4 of the Order (Doc. 40), the Court directed the parties to file a joint report setting out agreed deadlines for the further conduct of the trial to include: "a new agreed upon deadline for the identity and reports of expert witnesses." (Doc. 40 at ¶4(b))

5. Pursuant to the Court's Order (Doc. 40), counsel did indeed correspond in order to arrive at agreed dates as set out in the string of e-mails attached hereto as Exhibit A, which culminated on February 18, 2008 with the following e-mail exchange:

---

[2] The "previous deadline" referenced by the Court is found in §8 of the Uniform Scheduling Order (Doc. 10), which sets the deadline for disclosure as November 2, 2007 for the plaintiffs and December 3, 2007 for the defendants.

-2-

> "Jack: this follows our phone conversation of this morning
> during which we agreed on the following dates:
> Trial Term:   September 29, 2008
> **Expert I.D.:   July 29, 2008**
> Discovery Deadline:   August 29, 2008
>
> I will prepare a report shortly and send it to you.  Let me know
> of any changes and if there are none, I will file it today since it
> is due today." *(Emphasis supplied)* (Exhibit A, Page 1)

In compliance with the Court's Order (Doc. 40), the parties filed the joint report on February 18 (Doc. 41), which included the "new agreed upon deadline for the identity and reports of expert witnesses: **July 29, 2008**" (Doc. 41).

6.     Additionally, in January, 2008, one month before agreeing to the expert exchange date of July 29, 2008, the deposition of one of the plaintiff's treating physicians, N. Tucker Mattox, was taken on January 17, 2008, and was attended by defendants' counsel. In that deposition, Dr. Mattox gave the details of the extensive hospitalization and surgery which had been experienced by the plaintiff and there also was a discussion in that deposition regarding the prospects, probability, and need for additional surgery to include knee replacement surgery in the future, the upshot of which testimony is that Dr. Mattox was concerned about Wendy Wilker's left knee because it was fractured badly and into many pieces into the knee joint, that she could have post-traumatic arthritis in the future; that Dr. Mattox does do knee replacement surgery, but that he would need to see Wendy Wilker's current x-rays and determine what kind of pain she is having in order to make a recommendation about knee replacement surgery. (See Exhibit B, pages 61-64, Dep. of Dr. Mattox.)  In addition, Wendy Wilker's current treating physician, Dr. Terry at the

Hughston Clinic in Columbus, Georgia, was mentioned several times and, in particular, in conjunction with the questions regarding knee replacement surgery. So the defendants were well aware, at least by January 17, 2008, of Dr. Terry's treatment and the prospects of a knee replacement issue.

7. The defendants, now 18 months after suit was filed, 8 months after the first expert cut-off date has passed, 6 months after Dr. Mattox's deposition, 5 months after agreeing to the July 29, 2008 expert ID date, and on the eve of trial, seek to make a last minute expert designation. However, the defendants have offered no reason as justification for this extraordinary request and, for that matter, they have not made any explanation as to why, during the 18 months during which this case has been pending and especially during the last six months after Dr. Mattox's deposition, that they did **nothing** whatsoever to address the issue of whether they wanted to have an expert witness.

8. Inasmuch as the defendants have had ample time since the case started and the severity of the plaintiff's injury has been well known and completely documented throughout this litigation, the defendants should not be permitted to inject a medical expert into the case on the eve of trial inasmuch as doing so would be prejudicial to the plaintiff.

WHEREFORE, THE PREMISES CONSIDERED, the defendants' motion is due to be denied.

Respectfully submitted,

/s/ David E. Allred
DAVID E. ALLRED
D. CRAIG ALLRED
Attorneys for Plaintiffs

OF COUNSEL:

DAVID E. ALLRED, P.C.
Post Office Box 241594
Montgomery, Alabama 36124-1594
Telephone:  (334) 396-9200
Facsimile:   (334) 396-9977

JEMISON & MENDELSOHN, P.C.
1772 Platt Place
Montgomery, Alabama 36117
Telephone:  (334) 213-2323
Facsimile:   (334) 213-5663

## CERTIFICATE OF SERVICE

I hereby certify that I have this 24th day of July, 2008 electronically filed the foregoing *Plaintiffs' Opposition to Defendants' Motion to Extend Expert Witness Deadline* with the Clerk of the Court for the United States District Court, for the Middle District of Alabama, Northern Division, using the CM/ECF system, which will send notification of such filing to:

> Jack J. Hall, Jr., Esq.
> HALL, CONERLY & BOLVIG, P.C.
> Suite 1400 Financial Center
> 505 North 20th Street
> Birmingham, Alabama  35203-2626

/s/ David E. Allred
OF COUNSEL

## David Allred

| | |
|---|---|
| **From:** | David Allred |
| **Sent:** | Monday, February 18, 2008 9:42 AM |
| **To:** | 'Jack Hall, Jr' |
| **Cc:** | Craig Allred |
| **Subject:** | RE: Wilker v. U.S. Services; Robinson |

Jack: this follows our phone conversation of this morning during which we agreed on the following dates:
Trial Term: September 29, 2008
Expert I.D.: July 29, 2008
Discovery Deadline: August 29, 2008

I will prepare an report shortly and send it to you. Let me know of any changes and if there are none, I will file it today since it is due today.

David E. Allred
**David E. Allred, P.C.**
7030 Fain Park Drive, Suite 9
Montgomery, Alabama 36117
P.O. Box 241594 (36124-1594)
Telephone:  334-396-9200
Facsimile:   334-396-9977
E-Mail:       dallred@allredpclaw.com


**From:** David Allred
**Sent:** Wednesday, February 13, 2008 1:20 PM
**To:** 'Jack Hall, Jr'
**Cc:** Craig Allred
**Subject:** RE: Wilker v. U.S. Services; Robinson

Jack: I really do need for you to call me back on this so that I can prepare the report to Judge Fuller. I have left 2 phone messages this morning as well. Thanks, David

David E. Allred
**David E. Allred, P.C.**
7030 Fain Park Drive, Suite 9
Montgomery, Alabama 36117
P.O. Box 241594 (36124-1594)
Telephone:  334-396-9200
Facsimile:   334-396-9977
E-Mail:       dallred@allredpclaw.com


**From:** David Allred
**Sent:** Tuesday, February 12, 2008 2:50 PM
**To:** 'Jack Hall, Jr'
**Cc:** Craig Allred
**Subject:** Wilker v. U.S. Services; Robinson

**EXHIBIT A**

7/23/2008

Jack:
Today, I spoke to Wendy Wilker about her medical treatment and she said that she will be getting the stitches out of her R foot next week and her recovery from this procedure is expected to be 6 weeks from February 11th, which would be March 24th. At that time, she expects to have a procedure done on her L foot for which her anticipated recovery time is 6 weeks as well. Therefore, it looks as if she will be initially recovered from these 2 procedures around May 5th.

With that information, this will serve to address the issues in paragraph 4 (a, b, & c) of Judge Fuller's order of February 4, 2008 (Doc 40):

(a): [discovery deadline]: June 16, 2008

(b): [expert i.d. deadline]: May 16, 2008

(c): [trial date]: July 7, 2008

Let me have your response agreeing to these dates and I will incorporate the dates into the joint order to be filed by February 18th.
Thanks,
David

David E. Allred
**David E. Allred, P.C.**
7030 Fain Park Drive, Suite 9
Montgomery, Alabama 36117
P.O. Box 241594 (36124-1594)
Telephone:   334-396-9200
Facsimile:   334-396-9977
E-Mail:   dallred@allredpclaw.com

7/23/2008

Deposition of N. Tucker Mattox, M.D.   Wilker vs. US Services   January 17, 2008

Page 61

1  able to answer you specifically on that. I
2  know that she was unable to work for an
3  extended period of time afterwards.
4  Possibly as long as six, seven months, but
5  I honestly do not recall.
6  Q. Was Ms. Wilker a compliant patient, meaning
7     did she do what you suggested and
8     recommended that she do --
9  A. Yes.
10 Q. -- treatment-wise?
11    And did she try to get well with her
12    treatments and with physical therapy?
13 A. She was compliant and in my opinion was
14    working to get well, yes.
15 Q. All right. Have you addressed the issue of
16    what kind of disability from an orthopedic
17    standpoint she would have in the way of a
18    permanent disability with the fractures
19    that she had and --
20 A. No. I've not done --
21 Q. -- the treatment that she has?
22 A. -- any type of disability rating.
23 Q. All right. And is there -- With regard to

Page 62

1  what kind of problem she's having with her
2  knees or with the injuries now, when you
3  last saw her and the complaints she was
4  having, did you have an opinion whether she
5  was going to need a knee replacement or
6  anything like that in the future?
7  A. Well, I was concerned about the -- or I
8     would be concerned about the left knee
9     injury, the fact that it was an
10    intra-articular fracture and comminuted and
11    she'd had the problems that she could have
12    posttraumatic arthritis down the road,
13    which is -- don't know if that would be in
14    a few years or 20 to 30 years. There's no
15    way to know for sure. There's a
16    possibility she could need further
17    procedures if she does develop arthritis,
18    but speculation at this point just how bad
19    it would be.
20 Q. Okay. Do you do knee replacements, or do
21    you refer patients that need them to other
22    doctors?
23 A. I do knee replacements, yes.

Page 63

1  Q. All right. I believe she's been to see a
2     Dr. Terry over at the Hughston Clinic in
3     Columbus. Do you know of him?
4  A. I don't know him personally, no.
5  Q. We have his deposition scheduled. But I
6     understand that his opinion is she's going
7     to need a knee replacement. Would that be
8     consistent with your findings the last time
9     that you saw her?
10        MR. HALL: I'm going to object not
11           only for the grounds that I
12           have stated but for other
13           additional grounds to that
14           question.
15 A. Well, as I said that -- whether or not she
16    needs a knee replacement at this point.
17    She could possibly later. I don't have --
18    The way to determine that would be to
19    follow x-rays and see down the road how
20    that articular surface looks. As I said,
21    there's a possibility she could. At this
22    point, since I haven't seen her in six
23    months, I can't --

Page 64

1  Q. Would you defer to Dr. Terry since he's
2     seeing her currently on that issue?
3     Well, that would be his opinion. Again, I
4     would have to look at x-rays and see.
5     She -- Depends on what the x-rays look like
6     and the kind of pain she's having whether
7     she would be best served by a knee
8     replacement.
9  Q. Is that what makes the determination on
10    whether the knee replacement is needed what
11    the x-rays look like and then what kind of
12    pain and discomfort it's causing the
13    patient?
14 A. Yes.
15 Q. Okay. Now, with regard to the opinions
16    that you've given concerning Wendy Wilker,
17    have all of your opinions been to a
18    reasonable degree of medical certainty?
19 A. Yes.
20        (Plaintiff's Exhibit 2 was marked
21           for identification.)
22 Q. We have -- Some of the administrative
23    things we have to do in a court proceeding

16 (Pages 61 to 64)

EXHIBIT B