IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WENDY WILKER and<br>MICHAEL WILKER,<br><br>   *Plaintiffs,*<br><br>vs.<br><br>US SERVICES, LLC;<br>WILLIE MURRAY ROBINSON, *et al.,*<br><br>   *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 2:07-cv-00232-MEF |

## PLAINTIFFS' MOTION IN LIMINE /
## MOTION TO STRIKE DEFENDANTS' DENIAL OF AGENCY

NOW COME the plaintiffs, by and through their attorney, and move the Court to enter an Order prohibiting the defendants from relying on lack of agency as a defense to Defendant US Services, to prohibit US Services from asserting that Defendant Robinson was an independent contractor, and to strike the defendants' responsive pleadings denying agency, and, for reason, the plaintiffs would show unto the Court as follows:

### RELEVANT FACTS

1.      Defendant Willie Murray Robinson was operating an 18-wheel tractor-trailer rig on January 17, 2007, when he illegally stopped the rig in the plaintiff's lane of travel on County Road 37 in Lowndes County, Alabama.

2.    The undisputed testimony is that Defendant Robinson was hauling a load on behalf of Defendant US Services, which load he had picked up moments before the crash, at the Burkeville plant of GE Plastics in Burkeville, Alabama.

3.    Robinson readily concedes on his deposition that he was acting on behalf of US Services at the time that he stopped the rig, walked around in front of the tractor, and was about to fill out his log book when the crash occurred.

4.    Defendant US Services, however, maintains that Robinson's status was that of an independent contractor and, therefore, there was no agency relationship between Robinson and US Services.    Neither US Services nor Robinson have produced to the plaintiffs any document or lease agreement, as they allege existed between them and, in fact, the corporate representative of Defendant US Services concedes that US Services failed to enter into a written lease agreement with Robinson; hence, no such written lease agreement exists.

5.    The plaintiffs say that, pursuant to Federal law, even if a written lease agreement existed between Defendants Robinson and US Services, US Services and Robinson are deemed to have an agency relationship and are estopped to deny that relationship.    Inasmuch as the lease scheme argument advanced by US Services is prohibited by Federal law, it logically follows that any alleged unwritten lease would be similarly prohibited.

## ARGUMENT

Pursuant to 49 U.S.C. § 14102 and a Federal regulation promulgated pursuant to it, 49 C.F.R. § 376.12(c)(1)[1] requires that a motor carrier such as US Services, Inc. have "**exclusive** possession, control and use of [Robinson's truck]" and that US Services have assumed "**complete responsibility** for the operation of the equipment for the duration of the lease."

More than 50 years ago, interstate motor carriers, like US Services here, tried to shield themselves from liability from their drivers' negligence by various schemes including the leasing of trucks from independent contractors.[2]  Such arrangements invariably led to abuses that threatened public safety as unscrupulous motor carriers leased inexpensive, and unsafe, equipment from often incompetent and reckless shallow pocket drivers.[3]  By enacting § 14102(a)(4),[4] Congress required interstate motor carriers to "have control of and be responsible for operating those motor vehicles . . . on safety of operations and equipment, and with other applicable law **as if the motor vehicles were owned by the motor carrier**." (*Emphasis supplied*)  Section 376.12 sets forth certain written lease

---

[1] *Formerly* C.F.R. § 1057.12(c).

[2] *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 37 (Tex.Ct.App.-Fort Worth 2002).

[3] *Harris v. Mitchell*, 358 N.J. Super, 504, 507-08, 818 A.2d 443, 445 (2003).

[4] In 1995, Congress: (1) re-codified the Interstate Commerce Act; (2) abolished the Interstate Commerce Commission ("ICC"); and (3) transferred its functions to the U. S. Department of Transportation ("DOT") and the Surface Transportation Board.  See *Harris*, 358 N.J. Super. at 508, 818 A.2d at 445.  All argument in this brief is cited in the current, modern-day sections of the U.S.C. and the C.F.R., not the old sections.

requirements for all interstate trucking leases like the one alleged between US Services and

Robinson:

> [T]he written lease required . . . shall contain the following provisions. The required lease provisions shall be adhered to and performed by the authorized carrier . . . .
>
> (c) *Exclusive* possession and responsibilities. (1) The lease shall provide the authorized carrier lessee shall have *exclusive* **possession, control, and use** of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume **complete responsibility** for the operation of the equipment for the duration of the lease.

As noted, this regulation was promulgated to curtail widespread abuses regarding leased

trucking vehicles in interstate commerce, such as the one in the instant case:

> In the past, the use by truckers of leased or borrowed vehicles led to a number of abuses that threatened the public interest and the economic stability of the trucking industry. In some cases, ICC-licensed carriers used leased or interchanged vehicles to avoid safety regulations governing equipment and drivers. In other cases, the use of non-owned vehicles led to public confusion as to who was financially responsible for accidents caused by those vehicles.
>
> In order to address these abuses, Congress amended the Interstate Commerce Act to allow the ICC to prescribe regulations to ensure that motor carriers would be fully responsible for vehicles certified to them. . . .[5]

Under § 376.12(c)(1) and uniform caselaw, US Services is vicariously liable for accidents

caused by Robinson in interstate commerce because the tractor-trailer involved in the

instant case was unquestionably the subject of an alleged lease between US Services and

---

[5]*Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co.*, 868 F.2d 357, 362 (10th Cir. 1989).

-4-

Robinson and it is undisputed that Robinson was acting in the course and scope of his duties under the alleged lease at the time the subject accident occurred.[6] Stated differently, this section creates an "irrebuttable presumption of an employment relationship" between the carrier-lessee and the driver-lessor.[7] It is undisputed that Robinson was operating under the DOT authority of US Services. The Alabama Supreme Court and the Eleventh Circuit have both recognized this federal statutory employer doctrine in trucking liability tort personal injury or wrongful death cases.[8]

Nevertheless, Defendant US Services attempts to gloss over its federally mandated statutory duty entirely, ignoring the application of the Federal Motor Carrier Safety

---

[6]See *Sharpless v. Sim*, 209 S.W.3d 825 (Tex.App. [5th] 2006); *Jackson v. O'Shields*, 101 F.3d 1083, 1085 (5th Cir. 1996); *Plant Ins. Co. V. Transport Indem. Co.*, 823 F.2d 285, 288 (9th Cir. 1987); *Rodriguez v. Ager*, 705 F.2d 1229, 1233-1236 (10th Cir. 1983); *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.*, 722 F.2d 1400, 1404 (8th Cir. 1983): *Proctor v. Colonial Refrigerated Transp., Inc.*, 494 F.2d 89 (4th Cir. 1974); *Melton Nat'l Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473, 476-477 (3rd Cir. 1961); *Connecticut Indem. Co. v. Springfellow*, 956 F.Supp. 553 (M.D. Pa. 1997); *Riddle v. Trans-Cold Express, Inc.*, 530 F.Supp. 186 (S.D. Ill. 1982); *Cosmopolitan Mut. Ins. Co. v. White*, 336 F.Supp. 92, 96 (D. Del. 1972); *Wyckoff Trucking v. Marsh Bros. Trucking*, 58 Ohio St.3d 261, 569 N.E.2d 1049 (Ohio 1991); *Paul v. Bogle*, 484 N.W.2d 728, 732-733 (Mich. App. 1992); *Nationwide Mut. Ins. Co. v. Holbrooks*, 187 Ga. App. 706, 371 S.E.2d 252 (1988).

[7]*Wyckoff, supra*, see also *Judy v. Tri-State Motor Transit Co.*, 844 F.2d 1496, 1501 (11th Cir. 1988); *Zamalloa v. Hart*, 31 F.3d 911, 917 (9th Cir. 1994); *Mellon*, 289 F.2d at 477; *Baker v. Roberts Express, Inc.*, 800 F. Supp. 1571 (S.D. Ohio 1992); *Laux v. Juillerat*, 680 F.Supp. 1131 (S.D. Ohio 1987), aff'd, 860 F.2d 1079 (6th Cir. 1988); *Planet Ins. Co. v. Transport Indemnity Co.*, 823 F.2d 285, 288 (9th Cir. 1987); *Price v. Westmoreland*, 727 F.2d 494, 497 (5th Cir. 1984) (holding that "[a carrier-lessee is] vicariously liable as a matter of law for [lessor's] negligence"); *Proctor*, 494 F.2d at 92 (stating that "[t]he statute and regulatory pattern clearly eliminates the independent contractor concept from such lease arrangements and casts upon [the carrier-lessee] full responsibility for the negligence of [the driver] of the leased equipment"); *Ryder Truck Rental Co., Inc. v. UTF Carriers, Inc.*, 719 F.Supp. 455, 458 (W.D. Va. 1989) (holding that "federal law requires a driver furnished by a lessor-contractor to be considered a statutory employee of the lessee-carrier"); *Rodriguez*, 705 F.2d at 1236; *Cosmopolitan Mut.*, 336 F.Supp. at 96; *Kreider Truck Serv., Inc. v. Augustine*, 76 Ill.2d 535, 31 Ill.Dec. 802, 394 N.E.2d 1179, 1182 (1979) (holding that a carrier's "complete [r]esponsibility" for leased equipment continues until the carrier removes its ICC placard and obtains a receipt); *Wilson v. Riley Whittle, Inc.*, 145 Ariz., 317, 321, 701 P.2d 575, 579 (App. 1984) (federal law creates irrebuttable presumption that lessor is employee of the carrier); *Fuller v. Riedel*, 159 Wis.2d 323, 333, 464 N.W.2nd 97, 101 (Ct. App. 1990).

[8]*Phillips v. J.H. Transp.*, 565 So.2d 66 (Ala. 1990); *Ex parte Hicks*, 537 So.2d 486 (Ala. 1988); *Judy*, 844 F.2d at 1501.

Regulations to its operations in general and this accident in particular, and attempts to avoid vicarious liability in this case by claiming that Robinson was "an independent contractor". US Services' position is specifically prohibited under Federal law enacted over one-half a century prior to this accident with Mrs. Wilker and specifically prohibited by case law as cited herein. US Services cannot claim ignorance because the federal regulation was not cited in the Wilkers' Complaint because it was not necessary for the plaintiffs to have pleaded a separate vicarious liability claim to trigger the federal statutory employer doctrine.[9]

US Services may attempt to argue that subsection (c)(4) of § 376.12 cuts against the foregoing argument. It **does not**. Subsection (c)(4) states:

> Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14102 and attendant administrative requirements.

Congress' intent in enacting this provision was so that the (c)(1) statutory employer doctrine be applied only where a **third person like Mrs. Wilker** was injured or killed by the owner-operator's tortuous conduct; as to claims solely between the carrier and the owner-operator, Congress determined that these parties should be permitted to arrange their relationship as they wanted.[10]

---

[9]*Sharpless*, 209 S.W.3d at 830-831.

[10]*Sharpless*, 209 S.W.3d at 830; *Parker v. Erixon*, 123 N.C. App. 383, 390-391, 473 S.E.2d 421, 426 (1996); *Morris*, 78 S.W.3d at 56; *W. Ports Transp. v. Emp. Sec.*, 110 Wn. App. 440, 455-456, 41 P.3d 510 (2002); *Riddle*,

Because US Services was Robinson's statutory employer and it is undisputed that Robinson's tortuous conduct occurred while he acted in the line and scope of his employment, US Services is vicariously liable to the plaintiffs.

WHEREFORE, THE PREMISES CONSIDERED, plaintiffs move the Court to enter an Order that, as a matter of law, US Services may not rely on its independent contractor/lack of agency defense to avoid responsibility to the plaintiffs.

Respectfully submitted,


/s/ *David E. Allred*
DAVID E. ALLRED
D. CRAIG ALLRED
Attorneys for Plaintiffs

OF COUNSEL:

ALLRED & ALLRED, P.C.
Post Office Box 241594
Montgomery, Alabama 36124-1594
Telephone:    (334) 396-9200
Facsimile:    (334) 396-9977

JEMISON & MENDELSOHN, P.C.
1772 Platt Place
Montgomery, Alabama 36117
Telephone:    (334) 213-2323
Facsimile:    (334) 213-5663

---

530 F.Supp. at 189-190 ("the lessor and lessee of equipment operated under an I.C.C. certificate are free to agree, by contract, as to rights affecting their relationship, so long as their duty to the general public is not diminished"); *Carolina Cas. Ins. v. Ins. Co. of N. Am.*, 595 F.2d 128, 138 (3rd Cir. 1979) ("[w]hile a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors . . . of otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risk among private parties"); *Perry v. Harco Nat'l Ins. Co.*, 129 F.3d 1072, 1074 (9th Cir. 1997) (noting that one purpose of the Act was to protect members of the public from carriers' attempts to escape liability for drivers' negligence by claiming the drivers were independent contractors).

## CERTIFICATE OF SERVICE

I hereby certify that I have this 25th day of July, 2008 electronically filed the

foregoing *Plaintiffs' Motion in Limine / Motion to Strike Defendants' Denial of Agency* with the

Clerk of the Court for the United States District Court, for the Middle District of Alabama,

Northern Division, using the CM/ECF system, which will send notification of such filing

to:

> Jack J. Hall, Jr., Esq.
> HALL, CONERLY & BOLVIG, P.C.
> Suite 1400 Financial Center
> 505 North 20th Street
> Birmingham, Alabama   35203-2626

                                      /s/ David E. Allred
                                      OF COUNSEL